IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fox Joseph Salerno, | No. CV 10-1668-PHX-ROS (LOA) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles Ryan, et al., | |
| Respondents. | |

Petitioner has filed a Petition for Writ of Habeas Corpus by Person in State Custody Pursuant to 28 U.S.C. §2254, doc. 1, challenging his disciplinary conviction for extortion, case #08-A12-0095. Petitioner was sanctioned to 30 days' loss of good time credits. He raises two grounds for relief: (1) Petitioner's due process rights were violated when he was convicted of the disciplinary violation without sufficient evidence; and (2) Petitioner's due process rights were violated when proper procedures and process were not followed during his disciplinary hearings. (Doc. 1) Respondents filed an Answer to the Petition to which Petitioner has replied.[1] (Docs. 8, 9) For the reasons set forth below, the Petition should be denied.

**I. Background**

    **A. Challenged Disciplinary Violation**

---

[1] Petitioner also filed a Notice of Fraudulent Exhibits, doc. 10. In accordance with the Court's Order, Respondents filed a response to that notice, doc. 12. After review of Petitioner's notice and the response, the Court finds no support for Petitioner's allegations of fraudulent exhibits or other misconduct.

Petitioner is presently confined in the Arizona Department of Corrections following his conviction of multiple counts of theft, fraudulent schemes, trafficking in stolen property, and burglary. (Respondents' Exh. A at 16) His projected release date is September 2031. (*Id.*)

In a January 11, 2008 inmate letter to Sergeant Hegwood, Petitioner stated that, when Sergeant Hegwood had transported Petitioner to SMU, he put Petitioner's property in an unmarked bag and refused to put Petitioner's name on it. (Respondents' Exh. A at 65) Petitioner alleged that as a result, his property was lost or stolen. Petitioner valued his missing property - including clothing, a watch, and sunglasses - at $93.60. (*Id.*) Petitioner wrote that because Sergeant Hegwood "stole $93.60 from [him], next month [he was] going to have a friend find [Hegwood's] home address and go there to collect his money from you, your wife, or your children." (Respondents' Exh. A at 65) The letter also stated that it "was not a threat," and that Petitioner's "friends can collect debts owed [to him and Sergeant Hegwood could] either pay them or get a restraining order against them." (*Id.*)

After receiving the letter, Sergeant Hegwood completed an information report and issued an inmate disciplinary report to Petitioner, charging him with a group B-04 disciplinary violation - Extortion. (Respondents' Exh. A at 63, 67) Sergeant Morrow reviewed the report, and Sergeant Collet personally served the disciplinary report on Petitioner. (Respondents' Exh. A at 67) On January 22, 2008, Sergeant Collett requested a postponement of the disciplinary hearing frames, which was granted. (*Id.* at 69)

Before the disciplinary hearing, Petitioner submitted written questions to Sergeant Hegwood. (Respondents' Exh. A at 71) Sergeant Hegwood responded to the questions in late January 2008. (*Id.*) Sergeant Collett investigated the charge against Petitioner. Petitioner told Sergeant Collett that "it was not against policy to have someone collect a debt for him." (*Id.* at 73)

At the May 5, 2008 disciplinary hearing, Petitioner pled not guilty and evidence was presented. The disciplinary hearing officer found that "it is more probably true than not that inmate Salerno #63416 committed the violation based on the DR [disciplinary report]."

(Respondents' Exh. A at 75) The hearing officer also noted that he had considered Petitioner's witness statement. (*Id.*) The hearing officer sentenced Petitioner to ten days disciplinary detention, thirty days in Parole Class III, forty hours extra duty, thirty days loss of privileges, and referred Petitioner for reclassification. (*Id.*)

Petitioner appealed the hearing officer's decision, and it was affirmed. (Respondents' Exh. A at 77; doc. 9)

### B. Petitioner's Classification

Immediately before January 2008, Petitioner was housed at the Eyman Complex, Special Management Unit I ("SMU-I"), a maximum security (level 5) unit, that houses inmates with a public risk score ("P") of 4 and an institutional risk score ("I") of 3 (P-4/I-3). (Respondents' Exh. A at 19, 22) As part of a routine review, on April 16, 2008, the Institutional Classification Committee ("ICC") reduced Petitioner's public and institutional risk scores from P-4/I-3 to P-3/I-2. (Respondents' Exh. A at 22) Respondents state that Petitioner's housing assignment, SMU-I, was not changed due to a pending, unrelated security investigation.

After Petitioner was found guilty of the disciplinary charge at issue in this case, and of a similar disciplinary charge, the ICC reevaluated Petitioner's risk factors. On May 16, 2008, ICC recommended increasing Petitioner's security scores from P-3/I-2 back to P-4/I-3. (Respondents' Exh. A at 22) After the completion of the unrelated security investigation and Petitioner's reclassification, he was moved to Tucson Complex, Rincon Unit on May 29, 2008. (Respondents' Exh. A at 19)

In response to Petitioner's inquiry about his prison security classification score and prison placement, his classification was manually recalculated. (Respondents' Exh. B at 20) On August 26, 2008, Greg Fizer, Tucson Complex Warden, responded to Plaintiff's inquiry. He told Petitioner that, when the results of his disciplinary conviction was entered into the prison system, an error had been made in Petitioner's favor. (Respondents' Exh. B at 20) Had the disciplinary results been properly entered, Petitioner's violence level score would increase and 50 points would have been applied to his overall classification score

resulting in a maximum custody security score. (*Id.*) After the error was corrected, Petitioner was reclassified with a score of 50/36 or P-4/I-4. (*Id.*) On December 23, 2008, Petitioner was transferred from general population in Tucson Rincon Unit to Tucson Complex Detention Unit. (Respondents' Exh. A at 19)

### C. State Court Proceedings

On November 5, 2008, Petitioner filed a Petition for Special Action in the Arizona Superior Court, Maricopa County. (Respondents' Exh. B) Petitioner asserted that, due to his sexual orientation, he was being improperly housed at a more secure facility than necessary to limit his contact with other inmates in violation of the United States and Arizona Constitutions, Arizona law, ADC policy, and the criminal court's sentencing order. (Respondents' Exh. B at 2-3) Petitioner alleged that prison staff had issued fake disciplinary charges and failed to respond to his disciplinary appeals in violation of his rights to due process and equal protection. (*Id.*) He further argued that, but for the fake disciplinary charges, he would be in medium custody, not close custody. (Respondents' Exh. B at 3) Petitioner requested that the court expunge his disciplinary convictions, and order reclassification to a medium-custody prison facility. (*Id.*)

The trial court declined to exercise jurisdiction and dismissed the petition for special action. (Respondents' Exh. C at 1) The court stated that, even if it accepted jurisdiction, it would find that "A.R.S. § 31-201.01(L) bars this suit and would find that Petitioner's due process rights have not been violated in the context of the disciplinary process at issue here." (*Id.*)

Petitioner appealed to the Arizona Court of Appeals. (Respondents' Exh. D) The appellate court affirmed finding that the "record on appeal includes reports of the pertinent incidents including the contents of letters written by [Petitioner] which are threatening and which support the disciplinary action against him." (Respondents' Exh. F at 2-3)

Thereafter, Petitioner filed the pending petition challenging, on due process grounds, the disciplinary proceedings. (Doc. 1)

**II. Analysis**

A prisoner challenging disciplinary proceedings may seek habeas corpus relief pursuant to 28 U.S.C. § 2254. *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004) (adopting the"majority view that 28 U.S.C. § 2254 is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."), overruled on other grounds by *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010).

### A. Ground One

In Ground One, Petitioner argues that the disciplinary hearing violated his due process rights because insufficient evidence supported the finding of guilt. (Doc. 1)

Respondents argue that Petitioner was not entitled to due process protections in his disciplinary hearing, and alternatively, he was afforded sufficient process. Assuming that Petitioner was entitled to due process, the Court finds that he was afforded the process that was due.

Where prison disciplinary hearings may result in the loss of earned time credits, due process requires that an inmate receive: "(1) advanced written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Cross v. Cambra*, 1998 WL 917538, * 1 (N.D. Cal., Dec. 30, 1998) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).

The record establishes that the hearing comported with due process standards. First, Petitioner received written notice of the disciplinary charge which identified the date, conduct, and disciplinary rule at issue. (Respondents' Exh. A at 67) Second, Petitioner was permitted to present evidence in his defense. (Respondents' Exh. A at 67, 71, 75) Finally, Petitioner received a written statement explaining the reasons for the disciplinary action and the evidence the hearing officer relied upon. (Respondents' Exh. A at 75) Thus, *Wolff* was satisfied.

In addition to the *Wolff* requirements due process requires that "some evidence" support the administrative decision. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). "An examination of the entire record is not required nor is an independent assessment of the credibility of the witnesses or weighing of the evidence." *Id.* The relevant issue is whether any evidence in the record supports the disciplinary board's conclusion. *Id.* In addition, the Ninth Circuit has held that the information which forms the basis of the prison disciplinary action must bear some indicia of reliability. *Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987). "However, due process is satisfied when the record contains some factual information from which a committee can reasonably conclude that the information was reliable." *Carrillo v. Stainer*, 1997 WL 16312, * 8 (N.D. Cal., Jan. 6, 1997) (finding that correctional officer's report based on what she allegedly observed satisfied both the "some evidence" and "indicia of reliability" requirements.).

Here, there was "some evidence" of Petitioner's guilt of the disciplinary charge. The letter Petitioner wrote to Sergeant Hegwood was introduced as evidence in the hearing. In the letter, Petitioner wrote that Sergeant Hegwood owed him money because his refusal to label a bag containing Petitioner's property had resulted in the loss of that property. Petitioner stated that he was "going to have a friend find [Hegwood's] home address and go there to collect [Petitioner's] money from you, your wife, or your children." (Respondents' Exh. A at 65 ) Petitioner argues that the letter to Sergeant Hegwood concerned Hegwood's misconduct, and that he simply wanted his property or to be reimbursed. (Doc. 1 at 6) The text of the letter, however, indicates that it was an attempt to obtain money from Sergeant Hegwood. In view of the actors involved - a prison inmate and a prison employee - a statement that Petitioner would have a friend go to Sergeant Hegwood's home to collect money from Hegwood, his wife, or his children is threatening. The Court concludes that "some evidence" supported the finding of guilt. Because some reliable evidence supports the challenged disciplinary action, Petitioner is not entitled to habeas relief.

**B. Ground Two**

In Ground Two, Petitioner argues that his right to due process was violated because the disciplinary hearing was not held within the proper time frame. He also argues that his appeal was not considered "within time limits." (Doc. 1 at 7) He alleges that "Respondents forged extension request approvals and back dated them and lied as to reasons extensions were necessary." (*Id.*)

The record reflects that Petitioner was served with the disciplinary charge on January 22, 2008. (Respondents' Exh. A at 67) That same day, the Disciplinary Coordinator, Sergeant Collett, requested a postponement of disciplinary time frames, stating that it was a "Courtesy Case." (*Id.* at 68) The request for postponement appears to be a form, and does not explain the term "Courtesy Case." (Respondents' Exh. A at 69) The Associate Deputy Warden, J. Marsh, approved the postponement request. (*Id.*) The notice indicated that a disciplinary hearing was initially scheduled for January 29, 2008. (*Id.*) The disciplinary hearing was continued to May 5, 2008. (Respondents' Exh. A at 75) On appeal, Petitioner challenged the four-month delay in conducting the hearing. (Respondents' Exh. A at 77) The Appeals Officer found that there was good cause for the extension due to an "excessive caseload and the fact that [Petitioner's] case was held as a Courtesy Case for another unit due to [Petitioner's] transfer." (*Id.*)

Nothing in the record supports Petitioner's allegation that "Respondents forged extension request approvals and back dated them and lied as to reasons extensions were necessary." (*Id.*) Petitioner does not cite any legal or factual support for his conclusory allegations in Ground Two. Petitioner's unsupported, conclusory allegations are not sufficient to support a claim for federal habeas relief. *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations with no reference to the record or other evidence do not warrant habeas relief.) Moreover, there is nothing to support his allegation that the four-month extension of time to conduct his disciplinary hearing violated his rights to due process.

In accordance with the foregoing,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(d), doc. 1, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 10th day of August, 2011.

Lawrence O. Anderson
United States Magistrate Judge